## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**FRAPPLE, L.P.**
200 Lawrence Drive
West Chester, Pennsylvania 19380

Case No. _____

                    Plaintiff,

v.

**THE COMMISSIONERS OF**
**THE TOWN OF RISING SUN**
1 East Main Street
Rising Sun, Cecil County, Maryland 21911

Serve:       Judith M. Cox, Mayor
             1 East Main Street
             Rising Sun, Maryland 21911

                    Defendant.

## COMPLAINT

The Plaintiff Frapple, L.P., by its undersigned attorneys, hereby sues the

Defendant, The Commissioners of the Town of Rising Sun, Maryland, and for its

Complaint in this case states as follows:

## THE PARTIES

1.       Plaintiff, Frapple, L.P. ("Frapple"), is a Pennsylvania limited partnership, with

its principal place of business located at 200 Lawrence Drive, West Chester, Pennsylvania.

2.       Defendant, The Commissioners of the Town of Rising Sun, Maryland (the

"Town"), is a municipal corporation organized under the laws of the State of Maryland, to which the State has delegated specific but limited powers to pass laws, regulations and directives and otherwise act to promote certain local interests. The actions complained of herein were taken by the Town, directly and through the actions of its departments and agencies. The actions complained of herein constituted, implemented and executed the decisions officially adopted by Defendant.

### JURISDICTION

3.     This is a civil action pursuant to the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.   Accordingly, this Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331. Additionally, there is presently existing between the parties a matter in controversy exceeding the sum of One Hundred Thousand Dollars ($100,000.00), exclusive of interest and costs, and there is diversity of citizenship between the parties, so that this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

4.     Venue is properly situated in this Court pursuant to 28 U.S.C. § 1391(b).

### FACTS COMMON TO ALL COUNTS

5.     This action concerns whether the Town has a duty to supply municipal water and sewer service to real property that comprises an approved residential subdivision known as Wellington Manor ("Wellington Manor"), which is located in the Town.  Wellington Manor comprises 126 acres located northwest of the intersection of U.S. Route 1 and Red

Pump Road. Plaintiff is the owner and developer of Wellington Manor.

6.     The Town has a duty to provide water and sewer service without discrimination within the Town limits, and is required to provide a connection to its sewage system for properties such as Wellington Manor that are located within its service area.

7.     A preliminary subdivision plat for Wellington Manor was approved by the Town on June 20, 2005. The Preliminary Plat, Plan Approval Conditions require the Plaintiffs "to allow exploration of open space land for possible future water source and grant town all rights and land that may be required," and also provide that "any necessary future improvements to the Town's water and sewer system required to provide capacity to subdivision shall be negotiated as part of the public works agreement."

8.     On February 14, 2006, the Mayor and Commissioners of the Town adopted Resolutions 2006-01 and 2006-02, both as emergency measures, to impose a building moratorium on new construction based on the need for additional water supply sources (Resolution 2006-01), and to impose a building moratorium on new construction based on the non-compliance with the discharge permit regulation at the Town's Wastewater Treatment Plant (Resolution 2006-02).

9.     On June 5, 2006, MDE and the Town of Rising Sun finalized an administrative consent order regarding improvements to the Rising Sun Wastewater Treatment Plant to accomplish nitrification in order to achieve compliance with the effluent limitations of State Discharge Permit 99-DP-0107. Under the original terms of the consent order, Rising Sun

was to complete the plant upgrade by December 31, 2008. That deadline was not met, and as of the date of filing of this Complaint, the upgrades have not been implemented.

10.     The Town has informed Plaintiff that, as a result of the moratorium water and sewer capacity are not available and will not be available in the foreseeable future, and that the Town cannot say when they will be available.

11.     "[A]ny moratorium that lasts for more than one year should be viewed with special skepticism." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 342 (2002).

12.     This Court has held that "[w]hile local governments may properly impose a moratorium on development for police power purposes, such a moratorium must be reasonably limited as to time. . . . Such restraint must be imposed only as necessary. It may not 'prevent permanently the reasonable use of private property.'" *Smoke Rise, Inc. v. Washington Suburban Sanitary Commission*, 400 F.Supp. 1369, 1385-86 (D. Md. 1975).

13.     "Whether a given moratorium is unreasonably lengthy depends upon the surrounding circumstances. In land use cases, the critical question is often how much time the municipality needs to study the situation before it and develop a comprehensive zoning plan or other response to the situation." *Ecogen, LLC v. Town of Italy*, 438 F.Supp.2d 149, 161-62 (W.D.N.Y. 2006).

14.     "A municipality may invoke a temporary moratorium against the issuance of building permits on the basis of inadequate sewers. However, simultaneous with the

declaration of the moratorium, the municipality must be in the process of constructing or providing the services, or have adopted a reasonable plan for the installation of adequate sewers within a reasonable time. If a municipality invokes a moratorium against the issuance of building permits on the basis of inadequate sewers and does not adopt a reasonable plan for the construction of adequate sewers within a reasonable time, the moratorium is invalid and the denial of the issuance of the building permit is considered a taking of property without due process." *November Properties, Inc. v. City of Mayfield Heights*, 1979 WL 210535, 1 (Ohio App. 8 Dist., 1979).

15.    In the instant case, the Town is making no efforts to expand capacity and provide service within a reasonable time, therefore the moratorium is not reasonable. Likewise, connecting Wellington Manor to the water and sewer systems would not worsen the systems' problems, so the moratorium is not reasonable.

16.    The burden of providing adequate water and sewer service is disproportionately placed upon Plaintiff when residential use is denied to them while being granted to their neighbors. In effect, the Town is mandating a restrictive use on Plaintiff's property so as to afford neighboring residents more enjoyment in their exploitation of residential use. The Town at-large must bear the burden of providing adequate water and sewer facilities, not the Plaintiff alone. Denial of water and sewer service to Plaintiff on the basis of water and sewer system inadequacy constitutes an unconstitutional taking. The Town has placed a disproportionate burden upon Plaintiff in meeting its objectives by failing to pay just

compensation.  For this reason, the Town's denial of services is unconstitutional.

17.     On information and belief, the Town's existing sewage treatment plant, which is subject to the MDE consent order, consists of a simple lagoon system. It is a combination of primary treatment and secondary treatment, neither of which is engineered according to modern standards.  Thus, the primary treatment, *i.e.*, settling of dense solids and floatation of light solids, is not what one would expect to see in a typical settling tank.  Similarly, the secondary treatment, *i.e.*, biological decomposition of organic material, is simply what one would expect in a natural pond, albeit with some artificial aeration.  Because of low temperatures during the winter months, the biological decomposition is not sufficient and the BOD of the effluent from the lagoons exceeds the Town's permit conditions.

18.     The Town has hired the engineering firm of Camp Dresser & McKee Inc. ("CDM") to design the sewage treatment plant upgrade.  The Town's plan appears to be to install the bare minimum that would improve the secondary treatment, in a manner that may not even accomplish that goal, and that will not increase capacity so as to allow the moratorium to be lifted.

19.     On information and belief, the Town has no plans at all to implement any upgrades that would increase the volume capacity of the sewage treatment system and allow the moratorium to be lifted.

20.     The Town is not taking the actions that it is required to take to make the drastic measure of a building moratorium constitutionally permissible.  The time that has already

passed while the Town has delayed taking action, combined with the time that is likely to pass before the Town implements even the minimal upgrade that is contemplated, plus the additional time that will pass before the Town implements a comprehensive upgrade that would allow the moratorium to be lifted, all combine to render the moratorium an unconstitutional taking.

21.    The Town's moratorium is not reasonably calculated to accomplish the goal of insuring that the Town's water and sewer systems are not stretched beyond their capacity, because the Town is not progressing with reasonable diligence toward expanding the capacity of the water and the sewer systems. Consequently, the moratorium is unreasonable and Wellington Manor has been unconstitutionally deprived of its property rights.

22.    But for Defendant's arbitrary and capricious denials of Plaintiff's rights to connect to the water and sewer system, Plaintiff would have developed and sold the residential lots located in Wellington Manor. As a direct and proximate consequence of Defendant's unlawful actions, Plaintiff has been prevented from developing or selling any lots on that parcel, and, therefore, have been damaged in the approximate amount of Fifteen Million Dollars ($15,000,000.00) from the loss of revenue they would have received had they not been unlawfully prevented from selling the lots in Wellington Manor.

## COUNT I

## DENIAL OF DUE PROCESS, 42 U.S.C. § 1983

23.    The allegations of Paragraphs 1 through 22 of this Complaint are

incorporated herein by this reference as if realleged and set forth again in full.

24.    The Civil Rights Act provides, in pertinent part, that "Every person who,

under color of any statute, ordinance, regulation, custom or usage of any State or

Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of

the United States or other person within the jurisdiction thereof, to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to

the party injured in an action at law, suit in equity or other proper proceeding for redress."

42 U.S.C. § 1983.

25.    The Fourteenth Amendment to the Constitution of the United States

provides that the State may not "deprive any person of . . . property, without due process

of law." U.S. CONST. amend. XIV.  The Fifth Amendment similarly provides that, "No

person shall be . . . deprived of . . . property without due process of law." U.S. CONST.

amend. V.

26.    Plaintiff has a protectible property interest and entitlement to water and

sewer service for Wellington Manor.  Defendant acted with manifest caprice and

discriminatory intent to deny Plaintiff the water and sewer service to which it is entitled.

27.    Defendant's refusal to grant the service to which Plaintiff is entitled, and

thereby allow Plaintiff to develop its property, deprived Plaintiff of rights and privileges

secured to it by the Fourteenth Amendment to the U.S. Constitution, and violated the

Civil Rights Act of 1871, 42 U.S.C. § 1983.  These acts of Defendant, performed under

color of official authority and in furtherance of the Town's customs and policies, were arbitrary, capricious, discriminatory, and not substantially related to any legitimate governmental interest.

28.    Defendant evidenced deliberate indifference to the constitutional violations inflicted upon Plaintiff, effectively destroying the value of the property and rendering Plaintiff's development of the property economically unfeasible.

29.    Plaintiff has suffered substantial economic injury as a direct and proximate result of Defendant's conduct, and such injury can be redressed only by this Court's exercise of its remedial powers on Plaintiff's behalf. Plaintiff has been damaged in an amount as of yet unascertained, but believed to exceed Fifteen Million Dollars ($15,000,000.00), including, but not limited to, loss of revenue resulting from its inability to build and sell residential lots. Plaintiff reserves the right to seek leave of Court to amend this Complaint to conform to proof of such damages at trial.

30.    In committing the acts alleged herein, Defendant acted under color of official authority, in furtherance of the Town's policies and customs, with fraud, malice, oppression, and in callous and wanton disregard of the legal and constitutional rights of Plaintiff, so that Plaintiff is entitled to an award of punitive damages, by way of example and for purposes of deterrence, against Defendant.

WHEREFORE, the Plaintiff, Frapple, L.P. respectfully requests that the Court award it the following relief:

A.    compensatory damages, in an amount as yet undetermined but believed to exceed Fifteen Million Dollars ($15,000,000.00);

B.    reasonable and necessary attorney's fees and litigation costs, pursuant to 42 U.S.C. § 1988;

C.    punitive damages in the amount of One Hundred Thousand Dollars ($100,000.00); and

D.    such other and further relief as to the Court may seem appropriate.

## COUNT II

## DENIAL OF EQUAL PROTECTION, 42 U.S.C. § 1983

30.    The allegations of Paragraphs 1 through 22 of this Complaint are incorporated herein by this reference as if realleged and set forth again in full.

31.    The Civil Rights Act provides, in pertinent part, that "Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress." 42 U.S.C. § 1983.

32.    The Fourteenth Amendment to the Constitution of the United States

provides, "Nor shall any State ... deny to any person within its jurisdiction the equal protection of the law." U.S. CONST. amend. XIV.

33.     The Defendant's conduct in supplying public services to Plaintiff that are effectively different from those supplied to similarly situated landowners within the Town denied Plaintiff its right to equal protection under the laws. The Defendant's arbitrary and capricious refusals to provide the public services needed by Plaintiff also violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment and under 42 U.S.C. § 1983, in that Defendant's treatment of Plaintiff differed from its treatment of similarly situated landowners, and Defendant's disparate treatment of Plaintiff did not bear a rational relationship to any legitimate Town interest.

34.     Plaintiff has suffered substantial economic injury as a direct and proximate consequence of Defendant's conduct, and such injury can be redressed only by this Court's exercise of its remedial powers on Plaintiff's behalf. Plaintiff has been damaged in an amount as of yet unascertained, but believed to exceed Fifteen Million Dollars ($15,000,000.00), including, but not limited to, loss of revenue resulting from its inability to build and sell residential lots.

35.     In committing the acts alleged herein, Defendant acted under color of official authority, in furtherance of the Town's policies, with fraud, malice, oppression, and in callous and wanton disregard of the legal and constitutional rights of Plaintiff, so

that Plaintiff is entitled to an award of punitive damages, by way of example and for purposes of deterrence, against Defendant.

WHEREFORE, the Plaintiff, Frapple, L.P. respectfully requests that the Court award it the following relief:

      A.    compensatory damages, in an amount as yet undetermined but believed to exceed Fifteen Million Dollars ($15,000,000.00);

      B.    reasonable and necessary attorney's fees and litigation costs, pursuant to 42 U.S.C. § 1988;

      C.    punitive damages in the amount of One Hundred Thousand Dollars ($100,000.00); and

      D.    such other and further relief as to the Court may seem appropriate.

## COUNT III

## TAKING WITHOUT JUST COMPENSATION, 42 U.S.C. § 1983

36.    The allegations of Paragraphs 1 through 22 of this Complaint are incorporated herein by this reference as if realleged and set forth again in full.

37.    The Takings Clause of the Fifth Amendment to the U.S. Constitution, states, "[N]or shall private property be taken for public use, without just compensation." Through the Due Process Clause of the Fourteenth Amendment, the Takings Clause applies to the States and their political subdivisions, including Defendant.

38.    The Civil Rights Act provides, in pertinent part, that "Every person who,

under color of any statute, ordinance, regulation, custom or usage of any State or

Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of

the United States or other person within the jurisdiction thereof, to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to

the party injured in an action at law, suit in equity or other proper proceeding for redress."

42 U.S.C. § 1983.

39.     Although Plaintiff acquired a vested right to develop lots in the Wellington

Manor subdivision, Defendant has refused to provide public services to Plaintiff's

property. In so doing, Defendant has deprived Plaintiff of its vested property rights.

40.     Defendant's conduct constitutes an unlawful taking without just

compensation, in violation of the Fifth and Fourteenth Amendments to the U.S.

Constitution and 42 U.S.C. § 1983.

41.     Plaintiff has suffered substantial economic injury as a direct and proximate

consequence of Defendant's conduct, and such injury can be redressed only by this

Court's exercise of its remedial powers on Plaintiff's behalf. Plaintiff has been damaged

in an amount as of yet unascertained, but believed to exceed Fifteen Million Dollars

($15,000,000.00), including, but not limited to, loss of revenue resulting from its inability

to build and sell residential lots.

42.     In committing the acts alleged herein, Defendant acted under color of

official authority, in furtherance of the Town's policies, with fraud, malice, oppression,

and in callous and wanton disregard of the legal and constitutional rights of Plaintiff, so that Plaintiff is entitled to an award of punitive damages, by way of example and for purposes of deterrence, against Defendant.

WHEREFORE, the Plaintiff, Frapple, L.P. respectfully requests that the Court award it the following relief:

A.      compensatory damages, in an amount as yet undetermined but believed to exceed Fifteen Million Dollars ($15,000,000.00);

B.      reasonable and necessary attorney's fees and litigation costs, pursuant to 42 U.S.C. § 1988;

C.      punitive damages in the amount of One Hundred Thousand Dollars ($100,000.00); and

D.      such other and further relief as to the Court may seem appropriate.

## COUNT IV

## BREACH OF CONTRACT

43.     The allegations of Paragraphs 1 through 22 of this Complaint are incorporated herein by this reference as if realleged and set forth again in full.

44.     Plaintiff dedicated land, open space, and water rights in consideration of Defendant's agreement that, in exchange for the dedication, Plaintiff would acquire the right to develop lots in the Wellington Manor subdivision.

45.     Defendant has breached its agreement by purporting to refuse to permit

Plaintiff to develop any lots on the Property.

46.    Plaintiff has suffered substantial economic injury as a direct and proximate consequence of Defendant's breach, and such injury can be redressed only by this Court's exercise of its remedial powers on Plaintiff's behalf.  Specifically, Plaintiff has been damaged in an amount as of yet unascertained, but believed to exceed Fifteen Million Dollars ($15,000,000.00), including, but not limited to, loss of revenue resulting from its inability to build and sell residential lots.

WHEREFORE, the Plaintiff, Frapple, L.P. respectfully requests that the Court award it the following relief:

A.    compensatory damages, in an amount as yet undetermined but believed to exceed Fifteen Million Dollars ($15,000,000.00);

B.    reasonable and necessary attorney's fees and litigation costs, pursuant to 42 U.S.C. § 1988;

C.    punitive damages in the amount of One Hundred Thousand Dollars ($100,000.00); and

D.    such other and further relief as to the Court may seem appropriate.

## COUNT V

## PROMISSORY ESTOPPEL

47.    The allegations of Paragraphs 1 through 22 of this Complaint are incorporated herein by this reference as if realleged and set forth again in full.

48.    Defendant made a clear and definite promise that, in exchange for the dedication of the equivalent of open space, land, and water rights, Plaintiff would acquire the right to develop the Wellington Manor subdivision.

49.    Defendant reasonably expected that its promise would induce Plaintiff to dedicate the open space, land, and water rights.

50.    Defendant's promise did in fact induce Plaintiff to dedicate the open space, land and water rights.

51.    Plaintiff has suffered a substantial detriment as a direct and proximate consequence of Defendant's conduct, and the resulting detriment can be avoided only by the enforcement of Defendant's promise. Plaintiff has been damaged in an amount as of yet unascertained, but believed to exceed Fifteen Million Dollars ($15,000,000.00), including, but not limited to, loss of revenue resulting from its inability to build and sell residential lots.

WHEREFORE, the Plaintiff, Frapple, L.P. respectfully requests that the Court award it the following relief:

A.    compensatory damages, in an amount as yet undetermined but believed to exceed Fifteen Million Dollars ($15,000,000.00);

B.    reasonable and necessary attorney's fees and litigation costs, pursuant to 42 U.S.C. § 1988;

C.    punitive damages in the amount of One Hundred Thousand Dollars

09332/0/00628898.WPDv1                      16

($100,000.00); and

      D.    such other and further relief as to the Court may seem appropriate.

## COUNT VI

## EQUITABLE ESTOPPEL

52.    The allegations of Paragraphs 1 through 22 of this Complaint are incorporated herein by this reference as if realleged and set forth again in full.

53.    Plaintiff dedicated open space, land, and water rights on the basis of Defendant's authorized representation that Plaintiff would acquire the right to develop lots in the Wellington Manor subdivision.

54.    Despite its prior representation and despite Plaintiff's vested contractual rights, Defendant now asserts that Plaintiff cannot develop lots in Wellington Manor.

55.    Because of Plaintiff's substantial change in position in reasonable reliance on Defendant's representations, Defendant is equitably estopped to avoid the consequences of its prior representations.

56.    Plaintiff has suffered a substantial detriment as a direct and proximate consequence of Defendant's conduct. Specifically, Plaintiff has been damaged in an amount as of yet unascertained, but believed to exceed Fifteen Million Dollars ($15,000,000.00), including, but not limited to, loss of revenue resulting from its inability to build and sell residential lots.

WHEREFORE, the Plaintiff, Frapple, L.P. respectfully requests that the Court award it the following relief:

A.      compensatory damages, in an amount as yet undetermined but believed to exceed Fifteen Million Dollars ($15,000,000.00);

B.      reasonable and necessary attorney's fees and litigation costs, pursuant to 42 U.S.C. § 1988;

C.      punitive damages in the amount of One Hundred Thousand Dollars ($100,000.00); and

D.      such other and further relief as to the Court may seem appropriate.

/s/
_____
Jeffrey H. Scherr, Fed. Bar No. 23264
John F. Dougherty, Fed. Bar No. 25369
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21202
Telephone: (410) 752-6030
Facsimile: (410) 539-1269
jscherr@kg-law.com
jdougherty@kg-law.com