IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

FRAPPLE, L.P.

    Plaintiff,

       v.

COMMISSIONERS OF THE TOWN OF
RISING SUN

    Defendant.

CIVIL NO.: WDQ-10-0018

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Frapple sued the Commissioners of the Town of Rising Sun,
Maryland ("Rising Sun") for taking without just compensation,
and other claims. For the following reasons, Rising Sun's
motion to dismiss the second amended complaint will be granted
in part and denied in part.

I.  Background[1]

In March 2004, in a county water and sewer master plan,
Cecil County, Maryland, indicated that the town of Rising Sun
"plan[ned] to seek an increase in" its water and sewer
capacities. ECF No. 28 ¶17.

On June 9, 2005, Frapple, a Pennsylvania development
company, bought 126 acres of real property ("Wellington Manor")

---

[1] For the motion to dismiss, the well-pled allegations in
Frapple's second amended complaint are accepted as true. *See*
*Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).

in Rising Sun.  ECF No. 28 ¶¶1, 6, 8.  At the time, Rising Sun's sewer and water facilities could not support development of Wellington Manor, but the town planned to expand their capacity to allow the development.  *Id.* ¶11.  In a "comprehensive plan update," the town indicated it would approve Frapple's proposal to develop 227 residential units on Wellington Manor.  *Id.* ¶12.

On June 20, 2005, Rising Sun approved Frapple's "preliminary subdivision plat" for Wellington Manor.  *Id.* In the plat, Frapple stated that it would allow the town to explore "open space land for possible future water source[s, and] grant [the] town all rights and land that may be required."  The plat also stated that "any necessary future improvements to the Town's water and sewer system required to provide capacity to [Wellington Manor] shall be negotiated as part of the public works agreement."  *Id.*

On January 10, 2006, in reliance on Rising Sun's plan to expand water and sewer services to the property, Frapple contracted to sell it to Megill Homes, LLC, for $12 million-- later increased to $20,430,000--"contingent on Megill and Frapple obtaining approval of a subdivision and land development plan for a minimum of 227 residential building lots utilizing public water and public sewer."  *Id.* ¶14.[2]

---

[2] Frapple parenthetically stated elsewhere in the complaint that the purchase price was $20,460,000.  ECF No. 28 ¶14.

On February 14, 2006, Rising Sun adopted two emergency resolutions imposing moratoriums on new construction, because the town's water supply was insufficient (Resolution 2006-01), and its wastewater treatment plant ("WWTP"), which processed 275,000 gallons of waste per day, violated a state discharge regulation (Resolution 2006-02). *Id.* ¶15. In May, 2006, Rising Sun considered opening a new WWTP to increase its capacity and permit town growth. *Id.* ¶19.

On June 5, 2006, the Maryland Department of the Environment ("MDE") finalized a consent order with Rising Sun to bring the WWTP into compliance with discharge requirements. Rising Sun repeatedly announced its plans to comply and expand the plant's capacity. *Id.* ¶20.

In October 2006, Rising Sun approved, and Cecil County accepted, amendments to the Cecil County Water & Sewer Master Plan, increasing the WWTP's capacity and permitting wells to be dug at Wellington Manor. *Id.* ¶21. Frapple hired Geo-Technology Associates, Inc. ("GTA") to explore Wellington Manor's groundwater; GTA submitted and received approval for a "pumping test plan" for the Wellington Manor wells, and prepared a "groundwater appropriation permit application" that Rising Sun submitted in April 2007 to the Cecil County Health Department and MDE. *Id.* ¶¶13, 23.

Throughout 2006, Rising Sun represented to Frapple that it was "constructing and/or installing improvements to the sewer system . . . to increase capacity in order to be able to provide service [to Wellington Manor]."  *Id.* ¶22.

In March 2007, Frapple paid for a town water resources capacity management plan.  *Id.* ¶24.

In May 2007, the MDE extended Rising Sun's deadline to comply with wastewater treatment regulations to July 31, 2009. *Id.* ¶25.  At a meeting of the town Commissioners, Rising Sun officials stated that the town planned to build an expandable wastewater treatment plant and comply with the consent order by the 2009 deadline.  *Id.* ¶26.

By September 2007, Rising Sun was taking groundwater from the Wellington Manor property.  *Id.* ¶27.

In September 2007, MDE told Rising Sun that the town's aquifers could not support 350 new homes, and MDE would not allow Frapple to dig its own wells.[3]  *Id.* ¶27.  Rising Sun considered buying water from other towns to supplement its supply.  *Id.* ¶28.

In October, 2007, the town reported that it planned to build an expandable, 450,000 gallon per day wastewater treatment plant.  *Id.* ¶29.  In November, 2007, Rising Sun officials stated

---

[3] Because Rising Sun was already drawing water from the property. ECF No. 28 ¶27.

they were moving forward with a 675,000 gallon per day
wastewater treatment plant, and would apply for federal loans to
pay for the project. *Id.* ¶30.

On January 22, 2008 Rising Sun's commissioners voted to
increase water and sewer fees to pay for the improvements. Two
days later, the town administrator told Frapple that Rising Sun
was considering two sewer plant plans, each of which would
accommodate 700 or more new homes. *Id.* ¶¶31-32. The
administrator suggested meeting with interested developers to
discuss funding the project. *Id.* ¶32.

On February 10, 2009, the commissioners instructed the
Mayor, town attorney, and town administrator to exclude
developers from the planning process for the wastewater
treatment plant project. *Id.* ¶33. On March 18, 2009, Frapple's
attorney asked to meet with the town attorney to discuss the
wastewater treatment plant expansion. *Id.* ¶34. The town
attorney, Jack Gullo, Jr., responded that the meeting the town
administrator had proposed a year before was "perhaps . . .
premature." *Id.* ¶35. He did not disclose that the town had
decided not to include developers in the planning process or
expand the plant's capacity. *Id.* ¶35.

In May 2009, MDE awarded Rising Sun $800,000 to evaluate
and design a new WWTP. *Id.* ¶35.

In November and December 2009, Rising Sun requested proposals for a 275,000 gallon per day WWTP, which would not increase the plant's capacity. *Id.* ¶¶39-40.

On March 24, 2010, Rising Sun and the MDE entered a civil consent decree in the Circuit Court for Cecil County requiring Rising Sun to pay $18,500 for violations of the wastewater treatment permit. *Id.* ¶52.

In late 2010, Rising Sun commissioners voted to increase water and sewer fees so that they could expand the water and sewer systems, and obtained private and federal loans to improve the water and sewer systems. *Id.* ¶54.

On October 7, 2010, in the Circuit Court for Cecil County, Megill sued Frapple for breach of contract, alleging that Frapple had failed to obtain public water or sewer service and seeking $1.1 million in damages. *Id.* ¶59.

In January 2011, the MDE approved Rising Sun's proposals to build a wastewater treatment plant with a 500,000 gallon per day capacity and obtain water from outside sources to satisfy the town's growing needs. *Id.* ¶55. Rising Sun plans to complete the new plant, which will permit the development of Wellington Manor, by December 2012. *Id.*

Frapple has been unable to develop or sell residential lots at Wellington Manor because it cannot connect to Rising Sun's water and sewer systems. *Id.* ¶60.

6

On January 5, 2010, Frapple sued Rising Sun for taking its
property without just compensation and other claims.[4]  ECF No. 1.
On March 1, 2010, Frapple filed an amended complaint.  ECF No.
9.  On July 15, 2011, the Court allowed Frapple to file a second
amended complaint.  ECF No. 27.  On July 27, 2011, Rising Sun
moved to dismiss the second amended complaint for failure to
state a claim.  ECF No. 29.  Frapple opposed the motion.  ECF
No. 30.

II.  Analysis

A.   Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed
for failure to state a claim upon which relief can be granted.
Rule 12(b)(6) tests the legal sufficiency of a complaint, but
does not "resolve contests surrounding the facts, the merits of
a claim, or the applicability of defenses."  *Presley v. City of
Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a
"short and plain statement of the claim showing that the pleader
is entitled to relief."  *Midgal v. Rowe Price-Fleming Int'l,
Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's
notice-pleading requirements are "not onerous," the plaintiff

---

[4] They are: deprivation of property without due process of law
(Claim I), denial of equal protection (Claim II), taking without
just compensation (Claim III), breach of contract (Claim IV),
promissory estoppel (Claim V), and equitable estoppel (Claim
VI).

must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (*quoting Twombly,* 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 1950. "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

B.   Ripeness of Constitutional Claims

Rising Sun contends that Frapple's constitutional claims should be dismissed as unripe. ECF No. 29 at 1. Frapple argues that its claims "have attributes of both facial and as-applied challenges, and are ripe for adjudication under either standard." ECF No. 30 at 4.

1.   As-Applied Claims

For an as-applied Fifth Amendment taking without just compensation[5] ("just compensation") claim, the plaintiff must show that "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue," *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), or that the regulation leaves no question as to how it will apply to the plaintiff's property because the agency lacks discretion to vary the regulation, and the plaintiff's land is clearly within the regulated area, *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 739 (1997).

Also before a takings claim is ripe, the plaintiff must seek and be denied "compensation through the procedures [if any] the State has provided for doing so." *Williamson Cnty.*, 473 U.S. at 194.  In the Fourth Circuit, "*Williamson* . . . requires a federal takings litigant first to litigate in state court." *Greenspring Raquet Club, Inc. v. Balt. Cnty.*, 232 F.3d 887 (table), 2000 WL 1624496, *4 (4th Cir. Oct. 31, 2000).[6]   "[A]

---

[5] Applied to the states through the Fourteenth Amendment.

[6] *See also Front Royal & Warren Cnty. Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 283 (4th Cir. 1998) ("*Williamson County* would thus seem to presuppose that a would-be Takings Clause claimant would proceed first in state court . . . [but]

9

state compensation procedure will be deemed available and
adequate within the meaning of *Williamson* even when that
procedure remains unsure and undeveloped." *Southview Assocs.,
Ltd. v. Bongartz*, 980 F.2d 84, 99 (2d Cir. 1992) (citations
omitted).  The compensation procedure need not be statutory--the
possibility of obtaining damages in a judicial proceeding is
adequate. *Id.* at 100.

For an as-applied due process claim,[7] the plaintiff must
show "that the [regulatory] decision . . . [was] finally made
and applied to the property at issue." *Eide v. Sarasota Cnty.*,

---

does not require that the *federal* takings claim actually be
litigated in state court."). *But see Henry v. Jefferson Cnty.
Planning Comm'n*, 34 F. App'x 92, 96 (4th Cir. 2002) ("If the
West Virginia courts had made clear that no state process exists
for seeking compensation in these circumstances . . . [or] if a
state compensation process existed but the West Virginia courts
had made clear that, for example, a landowner is never entitled
to compensation for zoning restrictions on property, then [the
plaintiff] could claim that he had been denied just compensation
without having to pursue a clearly meritless claim.").

[7] There are two types of due process claims in land use cases:  a
due process claim may assert that the regulation is "arbitrary
and capricious, [and] does not bear a substantial relation to
the public health, safety, morals, or general welfare"; this
case is an arbitrary and capricious due process claim.  A "due
process takings" claim is one in which the plaintiff asserts
that "the application goes so far and destroys the value of his
or her property to such an extent that it has the same effect as
a taking by eminent domain." *Eide v. Sarasota Cnty.*, 908 F.2d
716, 721 (11th Cir. 1990); *see also Southview Assocs., Ltd. v.
Bongartz*, 980 F.2d 84, 96 (2d Cir. 1992).  A successful due
process takings claim results "in an invalidation of the local
authority's application of the regulation," whereas a successful
just compensation claim results in damages only. *Eide*, 908 F.2d
at 721.

10

908 F.2d 716, 721, 724 (11th Cir. 1990); *see also Southview*, 980
F.2d at 97.

Frapple contends that its claims are ripe because "the
relevant government entity . . . has reached a final decision
imposing a water and sewer moratorium that prevents development
of the property," there are no avenues for applying for a
variance, and Maryland "provides no mechanism" to compensate
Frapple.  ECF No. 30 at 5-7.

a.   Final Application to Wellington Manor

Frapple contends that the February 2006 moratoriums are
"final decision[s]" leaving "no room for the exercise of agency
discretion and [Frapple's] property is ineligible for develop-
ment."  ECF No. 30 at 5-6.  Accordingly, it argues, its claim is
ripe despite its failure to seek exceptions from the
moratoriums.  *Id.* at 6.

A District Court may need to make findings of fact to
determine whether an action is ripe for review.  *Reno v.
Catholic Social Servs., Inc.*, 509 U.S. 43, 66-67 (1993)
(remanding suit to District Court "for proceedings to determine"
facts for ripeness analysis).

There is not enough information to decide whether the
moratoriums provided the town with discretion to make exceptions
to its development ban.  Neither party has provided copies of
the moratoriums or sections of the town code about which they

11

are arguing.  *See* ECF Nos. 29, 30, 31.  Without the moratoriums

and town code rules, the Court is unable to assess whether there

were procedures for obtaining exceptions to the moratoriums.

Accordingly, the Court cannot determine whether the as-applied

due process claim is ripe.  *Suitum*, 520 U.S. at 739; *Eide*, 908

F.2d at 721, 724.  For the reasons stated below, the as-applied

just compensation claim is not ripe.

> b.   State Denial of Compensation

Frapple has not satisfied the second requirement of the

just compensation ripeness test.  Frapple argues that *Millison*

*v. Wilzack*, 551 A.2d 899 (Md. Ct. Spec. App. 1989) shows that

Maryland lacks a mechanism for compensation in inverse

condemnation cases because *Millison* held that § 12-101 of the

Real Property Title of the Maryland Code "does not provide a

mechanism for compensation in inverse condemnation cases."  ECF

No. 30 at 7 (*citing Millison*, 551 A.2d at 902).

"Maryland has long recognized that a claim for inverse

condemnation lies where the government's actions resulted in the

taking of private property."  *Awkard v. Md.-Nat'l Capital Park &*

*Planning Comm'n*, No. RWT-08-1562, 2011 WL 2896005 (D. Md. Jul.

15, 2011) (*citing Electro-Nucleonics, Inc. v. Wash. Suburban*

*Sanitary Comm'n*, 315 Md. 361, 554 A.2d 804 (1989)).  Recognition

of such a claim is a state "procedure" and a plaintiff must

pursue it before seeking a federal remedy.[8]  *Id.; see also Southview*, 980 F.2d at 100 (procedure need not be statutory).[9] Frapple has not alleged that it filed an inverse condemnation action in state court.  Accordingly, Frapple's as-applied just compensation claim is not ripe and must be dismissed.  *See Williamson Cnty.*, 473 U.S. at 194.

> 2.   Facial challenges

A facial just compensation claim is "generally ripe the moment the challenged regulation or ordinance is passed, but face[s] an uphill battle, [because] it is difficult to demonstrate that mere enactment of a piece of legislation deprived the owner of economically viable use of his property."

---

[8] Frapple contends that an inverse condemnation claim "is no more than a claim for damages" and may be brought in federal court instead of state court.  ECF No. 30 at 7 (*quoting Millison*, 551 A.2d at 902).  Frapple has identified no authority for the contention that, because the federal court might have jurisdiction over a diverse damages claim, Frapple can avoid litigation of its inverse condemnation claim through the required state procedure.

[9] *See also College Bowl, Inc. v. Mayor & City Council of Balt.*, 394 Md. 482, 907 A.2d 153, 157 (2006) (an inverse condemnation claim is "a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property" (internal quotation marks omitted)); *Rubie v. Mayor & City Council of Balt.*, No. S-01-1303, 2003 WL 25575661, *5 (D. Md. Jan. 28, 2003) (dismissing just compensation claim as premature because plaintiffs had not "ever filed an inverse condemnation action in state court--*the settled Maryland procedure* for determining whether a taking has occurred, and, if so, how much the state owes" (emphasis added) (*citing Wash. Suburban Sanitary Comm'n v. CAE-Link Corp.*, 330 Md. 115, 147-50, 622 A.2d 745 (1993), *Millison*, 551 A.2d 899)).

*Suitum*, 520 U.S. at 736 n.10 (internal quotation marks and citations omitted).  For a facial due process claim, the regulation must be final but need not have been applied to the plaintiff's property.  *See Eide*, 908 F.2d at 725.  Accordingly, to the extent Frapple asserts facial challenges to the moratoriums, the claims ripened when the moratoriums were passed.  *Id.*; *Suitum*, 520 U.S. at 736 n.10.

 C. Section 1983 Claims

 To succeed on a § 1983 claim, a plaintiff must show "(1) deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

 1. Due Process

 Claim I alleges that Frapple has a "protect[a]ble property interest [in] and entitlement to water and sewer service for Wellington Manor," and Rising Sun deprived Frapple of that interest without due process of law, in violation of the Fourteenth Amendment.  ECF No. 28 ¶¶66-67.

 The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV.  "Restrictions imposed by local governments acting under authority of the police power can constitute a deprivation of property without due process where the police power is exercised in an arbitrary or unreasonable

14

manner." *Smoke Rise, Inc. v. Wash. Suburban Sanitary Comm'n*,
400 F. Supp. 1369, 1383 (D. Md. 1975).

> To make out an arbitrary and capricious substantive
> due process claim, [a plaintiff] must demonstrate "(1)
> that it had . . . a property interest; (2) that the
> state deprived it of this . . . interest; and (3) that
> the state's action fell so far beyond the outer limits
> of legitimate governmental action that *no process*
> could cure the deficiency."

*Acorn Land v. Balt. Cnty.*, 402 F. App'x 809, 817 (4th Cir. 2010)
(*quoting Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 827
(4th Cir. 1995)).

         a.   Entitlement to Town Water and Sewer Services

Frapple must show that it has a protected property interest
in public water and sewer services. *Bd. of Regents of State
Colls. v. Roth*, 408 U.S. 564, 571 (1972); *Sylvia*, 48 F.3d at
827.  Rising Sun contends that Frapple has none.  ECF No. 29 at
7.

Property interests are created by state law, "rules[,] or
understandings." *Roth*, 408 U.S. at 577.  "[A] benefit is not a
protected entitlement if government officials may grant or deny
it in their discretion." *Town of Castle Rock v. Gonzales*, 545
U.S. 748, 756 (2005).

State-provided sewer services are not protected property
interests under the United States or Maryland Constitutions.
*Niefert v. Dep't of the Env't*, 395 Md. 486, 522-23, 910 A.2d
1100, 1121-22 (2006).  Further, in Maryland, government agencies

15

have discretion to impose a moratorium on development if it "lack[s] sufficient treatment capacity." 90 Md. Op. Atty. Gen. 60, 2005 WL 892168 at *5 (Apr. 13, 2005) (*citing Ungar v. State*, 492 A.2d 1336, 1342 (Md. Ct. Spec. App. 1985) (seven month sewer moratorium did not violate plaintiffs' due process rights)). Accordingly, Frapple lacks a protectable property interest in water and sewer service.[10]

Frapple has not stated a § 1983 due process claim. Claim I will be dismissed.

### b. Availability of State Process

"Actions that violate state law are properly challenged in state courts. . . .   [T]hat established state procedures [are] available to address and correct illegal actions . . . belies the existence of a substantive due process claim." *Sylvia*, 48 F.3d at 829. A plaintiff must "plausibly plead that no state-court process could cure [its] injury" to state an arbitrary and capricious due process claim. *Acorn*, 402 F. App'x at 817 (dismissing due process claim for failure to plead lack of state remedy).

---

[10] Frapple contends that the advisory opinion of the Maryland Attorney General to the Board of County Commissioners of Queen Anne's County establishes a property interest in water and sewer services. ECF No. 30 at 10. The opinion is an "understanding," *Roth*, 408 U.S. at 577, but it considered whether a county could exclude lots along a preexisting septic line, not whether it was obliged to extend the septic line to reach new lots. *See* 90 Md. Op. Atty. Gen. 60, 2005 WL 892168 at *2, 5.

Frapple did not allege that no state process was available to it. *See* ECF No. 28 ¶¶64-71. Further, Maryland law provides an administrative process for seeking exceptions to town ordinances in § 4.07(d)(3) of Article 66B of the Maryland Code, and Maryland courts regularly hear claims that moratoriums are invalid, *e.g. Anselmo v. Mayor*, 7 A.3d 710, 718 (Md. Ct. Spec. App. 2010); *Meredith v. Talbot Cnty.*, 560 A.2d 599, 602 (Md. Ct. Spec. App. 1989); *Ungar*, 492 A.2d at 1342. Accordingly, even if Frapple had satisfied the other due process requirements, its claim would fail because it has not plausibly alleged that no state court remedy was available.

      2.   Equal Protection

Claim II alleges that Rising Sun withheld public services from Frapple which it supplied to similarly situated landowners in violation of the Equal Protection clause of the Fourteenth Amendment. ECF No. 28 ¶75. The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV.

Frapple is not a member of a suspect class and does not claim it has been deprived of a fundamental right; accordingly, the Court must review the moratoriums under the rational basis test. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985) (regulation is subject to rational basis review unless it classifies by race, alienage, or national

17

origin); *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).
With respect to social or economic regulation, "the Equal
Protection Clause allows the States wide latitude, and the
Constitution presumes that even improvident decisions will
eventually be rectified by the democratic process." *City of
Cleburne*, 473 U.S. at 440.  Accordingly, such regulation "must
be upheld against equal protection challenge if there is any
reasonably conceivable state of facts that could provide a
rational basis for the classification." *Beach Commc'ns*, 508
U.S. at 313.

The Court first determines whether "the end that the state
seeks to achieve is a legitimate governmental purpose." *Sylvia
Dev. Corp. v. Calvert Cnty, Md.*, 48 F.3d 810, 820 (4th Cir.
1995).  The Court will not "substitute its value judgments for
those established by the democratically chosen branch." *Id.*  If
the state's goal is legitimate, the Court determines "whether
the classification appropriately furthers the legislative
purpose." *Id.*  Frapple bears the burden of negating "every
conceivable basis which might support" the regulation. *Beach
Commc'ns*, 508 U.S. at 315.

Rising Sun's objective in implementing the moratoriums--to
ensure adequate water supplies and safe sewage treatment while
it determines how, and implements its plan, to increase service
capacity--is legitimate, and the moratoriums further that

18

purpose by preventing increased demand on the sewer and water infrastructure. *See Smoke Rise*, 400 F. Supp. at 1383-84.

Accordingly, Frapple's Equal Protection claim will be dismissed.

### 3.   Fifth Amendment Taking

Claim III alleges Rising Sun's moratoriums deprived Frapple of its right to develop Wellington Manor without compensation. ECF No. 28 ¶81.  As Frapple's as-applied challenge will be dismissed as unripe, only the facial challenge remains.  That claim "face[s] an uphill battle, [because] it is difficult to demonstrate that mere enactment of a piece of legislation deprived the owner of economically viable use of his property." *Suitum*, 520 U.S. at 736 n.10 (internal quotation marks and citations omitted).

The Fifth Amendment prohibits the government from taking private property for public use without compensating the owner. U.S. CONST. AMEND V.  To decide whether there has been a constitutional taking, the court considers three factors: "the economic impact of the regulation, the extent to which the regulation interferes with the investment-backed expectations, and the character of the governmental action." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 164 (4th Cir. 2008). Primary among the factors is "the extent to which the regulation has interfered with distinct investment-backed expectations."

*Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538-39 (2005).   The underlying objective of the Fifth Amendment is "to prevent the government from forcing some people alone to bear public burdens which, in all fairness, should be borne by the public as a whole."   *Id.* (internal quotation marks and citations omitted).

Frapple has alleged that the moratoriums prevented the $20 million sale of Wellington Manor and caused the potential buyer, Megill, to sue Frapple for $1.1 million for breach of the sale contract.   ECF No. 28 ¶¶59, 60.   Frapple seeks the full value of the sale contract, $20,430,000--or more--in compensatory damages.   ECF No. 28 ¶83.   A 100% diminution in value is a "constitutionally troubling" economic impact.   *Henry v. Jefferson Cnty. Comm'n*, 637 F.3d 269, 277 (4th Cir. 2011).[11]

Investment-backed expectations must be reasonable: they must be "predicated on having an entitlement" that the plaintiff has.   *Henry*, 637 F.3d at 277.   As discussed above, Frapple lacks a constitutional entitlement to water and sewer services.   Part II.C.1, *supra*.   Frapple's investment-backed expectation-- selling Wellington Manor to Megill--depended on its entitlement

---

[11] The diminution is the value of the unimproved property with a right to develop compared to the value of the same property without the right to develop.   *Henry*, 637 F.3d at 277.   Should the evidence at the summary judgment stage demonstrate a lesser diminution in value, particularly related to the approaching end of the moratoriums, this factor may weigh toward finding no taking.   *Id.* (noting that "diminutions in value of 75% and 92.5%" do not cause a regulatory taking).

to water and sewer services. ECF No. 28 ¶14. As Frapple was
not entitled to those services, the investment-backed
expectations weigh against finding a taking. *See Henry*, 637
F.3d at 277.

The third element of the takings evaluation, the character
of the action, asks whether the action is based on traditional,
legitimate concerns, including environmental impact. *Henry*, 637
F.3d at 278. The Rising Sun moratoriums address a threat of
environmental harm from wastewater discharges, and to public
health from insufficient water supplies. ECF No. 28 ¶15. This
factor also weighs against finding a taking.

Frapple does not show how the enactment of the prohibition,
which applies to Frapple "and all other property owners," ECF
No. 30 at 6, disproportionately places a public burden on
Frapple. Indeed, it appears that the moratoriums (as enacted,
because the as-applied challenge is not ripe) place the burden
"on the public as a whole." *Laurel Sand & Gravel*, 519 F.3d at
164. Accordingly, weighing all the factors and the purpose of
the takings clause, no taking has occurred. *See id.* Claim III
will be dismissed.

4.   Relief for Constitutional Claims

Frapple states that it is entitled to punitive damages for
its constitutional claims. ECF No. 28 ¶¶71, 77, 84. Punitive
damages are not available against municipalities in § 1983

actions. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

Frapple also seeks an injunction "ordering [Rising Sun] to take immediate action to make water and sewer service available to" Frapple, based on the constitutional claims. The Fifth Amendment takings clause "does not prohibit the taking of private property, but instead places a condition on the exercise of that power." *Lingle*, 544 U.S. at 537. Accordingly, the takings clause does not authorize the return of the property-- only compensation for the taking. *Id.* at 544.

Had Frapple adequately alleged constitutional violations-- it has not--its claims for punitive damages and for the Fifth Amendment injunction would be dismissed.

   D.   Common Law Claims

Frapple alleged that when Rising Sun decided not to expand the WWTP and water services, the moratoriums became permanent, resulting in a breach of contract, promissory estoppel, and equitable estoppel.[12]   ECF No. 28 ¶¶87-88, 93, 97.   Rising Sun allegedly agreed, promised, or made an "authorized represen-tation," in approving the preliminary subdivision plat, that Frapple "would acquire the right to develop lots in the Wellington Manor subdivision." ¶¶86, 90, 95.

---

[12] Frapple acknowledges that Rising Sun resumed its plans to expand, and expects to finish the new, larger WWTP by the end of 2012.   ECF No. 28 ¶55.

1.   Immunity for the Contract Claim

"The immunity afforded to local governments is . . . much narrower than the immunity of the State." *Hansen v. City of Laurel*, 420 Md. 670, 680 n.5, 25 A.3d 122, 128 n.5 (2011) (internal quotation marks and citation omitted).  "[T]here has never been a common law right to governmental immunity for contract claims against local governments." *BEKA Indus., Inc. v. Worcester Cnty. Bd. of Educ.*, 419 Md. 194, 212 n.12, 18 A.3d 890, 901 (2011).  Rising Sun is not entitled to sovereign immunity for the contract claim.

2.   Existence of an Enforceable Contract

A contract is "a promise or set of promises for the breach of which the law gives a remedy," to which both parties assent, that "express[es] with definiteness and certainty the nature and extent of the parties' obligations." *Kiley v. First Nat'l Bank of Md.*, 649 A.2d 1145, 1152 (Md. Ct. Spec. App. 1994) (*citing Md. Supreme Corp. v. Blake Co.*, 279 Md. 531, 539, 369 A.2d 1017 (1977), *Canaras v. Lift Truck Servs.*, 272 Md. 337, 346, 322 A.2d 855 (1950)).[13]

---

[13] As Frapple had no property interest in developing Wellington Manor, or in water and sewer services, *see supra*, it also has not alleged a "breach of contract . . . actionable under 42 U.S.C. § 1983." ECF No. 30 at 15.  Accordingly, the contract claim must be analyzed under Maryland law.

In Maryland, "as long as the execution of the contract is within the power of [a municipality, it] is answerable in damages for breaching that contract" and may be subject to an order of specific performance of the contract.[14]  *Montgomery Cnty. v. Revere Nat'l Corp., Inc.*, 341 Md. 366, 385, 671 A.2d 1, 10 (1996) (internal quotation marks and citation omitted).[15]

However, a developer's right to develop property, even with approval from the local government, does not vest until the developer "obtains a lawful building permit, commences to build in good faith, and completes substantial construction on the property." *Prince George's Cnty. v. Sunrise Dev. Ltd.*, 330 Md. 297, 312, 623 A.2d 1296, 1304 (1993) (internal quotation marks

---

[14] Rising Sun notes that a "municipality can make a contract only in the manner proscribed by the legislature [and town charter]. . . .[I]f essential formalities are lacking, the contract is invalid and unenforceable." *Algave v. Mayor & City Council of Ocean City*, 5 F. Supp. 2d 354, 357 (D. Md. 1998) (*quoting Tuxedo Cheverly Volunteer Fire Co., Inc. v. Prince George's Cnty.*, 385 A.2d 819 (Md. Ct. Spec. App. 1978)). The burden is on the plaintiff to show compliance with the charter and legislative requirements. *Id.* However, Rising Sun has identified no regulation governing the town's ability to contract, and the town charter places no limits on the town's ability to contract. *See* Municipal Charter, Town of Rising Sun, *available at* http://www.risingsunmd.org/egov/docs/1231879094_529754.pdf.

[15] One limit on a municipality's contracting ability is that it "cannot obligate itself by advance contract to provide zoning." *Id.* Frapple emphasizes that its claims do not rest on a zoning decision, but the bar on promising future building approval applies with equal force in this context. Accordingly, Rising Sun's approval of a *preliminary* plat, with a promise to negotiate water rights in a future public works agreement, was not a binding promise of future building approval. *See id.*

24

and citation omitted).   Accordingly, even if preliminary town approval constituted an enforceable exchange of promises, it did not create an enforceable right to develop the property if the builder's rights have not vested.  *Id.*

Frapple has failed to state a breach of contract claim; Claim V will be dismissed.

### 3.   Promissory Estoppel

In Maryland, "promissory estoppel is an alternative means of obtaining contractual relief" when acceptance or consider-ation is lacking.  *Md. Transp. Auth. Police Lodge No. 34 of Fraternal Order of Police, Inc. v. Md. Dep't of Transp.*, 5 A.3d 1174, 1227 (Md. Ct. Spec. App. 2010), *rev'd on other grounds*, 420 Md. 141, 21 A.3d 1098 (2011).  To state a claim for promissory estoppel, the plaintiff must allege:

> (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3)  which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise.

*Id.* at 1224.

Frapple has alleged that (1) Rising Sun promised that "in exchange for dedication of . . . open space, land, and water rights, [Frapple] would acquire the right to develop" Wellington Manor as a subdivision; (2) Rising Sun "reasonably expected that its promise would induce [Frapple] to dedicate the open space,

25

land and water rights [to Rising Sun]"; (3) Rising Sun's promise induced Frapple "to dedicate the open space, land and water rights" to the town; and (4) Frapple suffered a detriment that can only be avoided by requiring Rising Sun "to make water and sewer service available" to Frapple.   ECF No. 28 ¶¶12, 90-93(B).[16]

Rising Sun counters that Frapple could be made whole by awarding damages or by "return of the land and water rights allegedly dedicated" by Frapple to the town.   ECF No. 29 at 24. Rising Sun correctly notes that "the trial court, and not a jury, must determine that [enforcing the promise] is necessary to prevent injustice."  *Id.* (*quoting Pavel Enters., Inc. v. A.S. Johnson, Co.*, 342 Md. 143, 168, 674 A.2d 521, 533 (1996)). However, that is a question of fact to be proven through the evidence--Frapple has adequately pled a promissory estoppel claim.  It will not be dismissed.

> 4.   Tort Claims Act Requirements

Unlike promissory estoppel, which sounds in contract, equitable estoppel sounds in tort, as it is comparable to fraud. *Md. Transp. Auth.*, 5 A.3d at 1225.  Accordingly, the Local Government Tort Claims Act ("LGTCA") applies to the Equitable Estoppel claim.  Md. Code, Cts. & Jud. Proc. § 5-301 *et seq.*

---

[16] Frapple argues that Rising Sun "exchanged the right to drill water supply wells on [Wellington Manor] for the obligation to provide water and sewer service to [it]."  ECF No. 30 at 24.

The LGTCA requires that a plaintiff give notice to a local government within 180 days after an injury, as a condition precedent to suing that government entity.  Md. Code, Cts. & Jud. Proc. § 5-301(b)(1).

Serving a civil complaint on the municipality gives adequate notice if it is done within 180 days after the injury. *Carter v. Jess*, 179 F. Supp. 534, 541 (D. Md. 2001).  Further, failure to give notice is not necessarily fatal to the suit, if the defendant is not prejudiced, and the plaintiff shows good cause for failing to provide the notice.  Md. Code, Cts & Jud. Proc. § 5-301(a).

Frapple argues that its claims arose "no earlier than November 24, 2009, when [Rising Sun] . . . decided not to increase the capacity of the WWTP." ECF No. 30 at 9.  It sent a copy of the complaint to Gullo, the town attorney, on January 7, 2010.  ECF No. 28 ¶48.  Accordingly, it has satisfied the LGTCA's notice requirement.  *See Carter*, 179 F. Supp. 541.

> 5.   Equitable Estoppel

Equitable estoppel is

> the effect of the voluntary conduct of a party [which precludes it] . . . at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

*Md. Reclamation Assocs., Inc. v. Harford Cnty.*, 414 Md. 1, 52, 994 A.2d 842, 872 (2010) (internal citation omitted).

In land use cases, the developer must have "vested rights in the property at issue" to assert equitable estoppel against a municipality. *Id.*, 414 Md. at 53, 994 A.2d at 872-73. Neither purchase of land with the expectation that a town ordinance will soon change, nor possession of a building permit--separately or together--creates a vested right in development of the property. *Id.*

To the extent Maryland recognizes and Frapple alleges the water services equivalent of zoning estoppel, "if the developer has good reason to believe, before or while acting to his detriment, that the official's mind may soon change, estoppel may not be justified." *Id.*, 414 Md. at 58, 994 A.2d at 876. When facts are available to the developer that "should have alerted [it] to the real possibility that its plans . . . would not come to fruition," estoppel is not justified. *Id.*, 414 Md. at 59, 994 A.2d at 876.

When Frapple purchased the property it knew that Rising Sun's water and sewer capacity would not, then, allow development of a residential subdivision. *See* ECF No. 28 ¶11. Its right to build had not vested. *See id.*, 414 Md. at 53, 994 A.2d at 872-73. Accordingly, Frapple has not stated a claim

under traditional equitable estoppel or land use estoppel theories.

Finally, equitable estoppel requires that "the representation in question . . . be of some present or past fact," not a "promise to do something in the future." *Md. Transp. Auth.*, 5 A.3d at 1225.  Frapple alleges reliance on a promise of future services, not a misstatement of past or present fact.  ECF No. 28 ¶95.  Accordingly, it has not stated an equitable estoppel claim.

III. Conclusion

For the reasons stated above, Rising Sun's motion to dismiss will be granted in part and denied in part.

_3/8/12_____
Date

_____
William D. Quarles, Jr.
United States District Judge