IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

FRAPPLE, L.P.

    Plaintiff,

v.

COMMISSIONERS OF THE TOWN OF
RISING SUN

    Defendant.

CIVIL NO.: WDQ-10-0018

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Frapple, L.P. ("Frapple") sued the Commissioners of the Town of Rising Sun, Maryland ("Rising Sun" or the "Town") for constitutional and contract claims. Pending are Frapple's motion for leave to file a third amended complaint and Rising Sun's motion for summary judgment. For the following reasons, Frapple's motion will be denied, and Rising Sun's motion will be granted.

I.   Background[1]

In 2003, Rising Sun annexed a property known as Wellington Manor. *See* ECF No. 50-7 at 8. The March 2004 Cecil County

---

[1] In an examination of the futility of a motion to amend the complaint, the well-pled allegations in the proposed complaint are taken as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011); *see United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are. to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Water and Sewer Master Plan (the "Master Plan") indicated that Rising Sun planned to increase its discharge from 275,000 gallons per day to 350,000 gallons per day. ECF No. 50-3 at 8.

On June 9, 2005, Frapple purchased Wellington Manor. *Id.* at 7. Later that month, Rising Sun approved Frapple's preliminary subdivision plat for 227 lots. *See* ECF Nos. 48-1 at 1, 50-5. Approval Condition 10 required Frapple "to allow [] exploration of open space land for possible future water source and grant town all rights and land that may be required." ECF No. 50-5 at 3. General Note 11 indicated that water and sewer services would be provided by Rising Sun. *Id.* at 4. The plat also contained a designation of approximately 3.76 acres "to be added to the lands of the Town of Rising Sun." *Id.* at 5. Later in 2005,[2] Frapple hired Geo-Technology Associates, Inc. ("GTA") for groundwater exploration at Wellington Manor. ECF No. 50-3 at 9.

On January 10, 2006, Frapple and Megill Homes, LLC ("Megill") executed an Agreement of Sale in which Megill agreed to purchase Wellington Manor for $12,000,000 on the condition that Megill and Frapple obtain approval of a subdivision plan for at least 227 residential lots with public water and sewer. ECF No. 50-3 at 10. The price was later increased to $20,430,000. *Id.*

---

[2] The date is unclear.

On February 14, 2006, the Commissioners of Rising Sun adopted Resolutions 2006-01 and 2006-02 which imposed a moratorium on new construction because of a lack of water capacity and the Town's wastewater treatment plant's regulatory non-compliance. *Id.* On March 21, 2006, the Master Plan was amended to reflect Rising Sun's proposed upgrades. *Id.* at 11. On June 5, 2006, the Maryland Department of the Environment ("MDE") and Rising Sun entered an administrative consent order for nitrification upgrades at the wastewater treatment plant to achieve compliance with its discharge permit. *Id.* In March 2007, the deadline for compliance with the consent order was extended to July 31, 2009. *See* ECF Nos. 28 ¶ 25, 39 ¶ 25.

On October 10, 2006, Rising Sun approved an amendment to the Master Plan indicating that it would increase its wastewater treatment capacity to 670,000 gallons per day, and that there would be new wells on Wellington Manor yielding 350 to 500 gallons per minute. ECF No. 50-3 at 11. On October 16, 2006, Cecil County approved the amendments. *Id.* Around this time, "the Town represented that it was 'currently constructing and/or installing improvements to the sewer system to reduce effluent BOD and ammonia levels and to increase capacity in order to be

able to provide service to the property.'"[3] Throughout 2007, Town officials presented plans for the wastewater treatment plant--including a design for 675,000 gallons per day--and indicated that the July 31, 2009 deadline would be met. *See* ECF Nos. 39 ¶ 30; 50-3 at 12-13.

In 2006 or 2007,[4] GTA submitted a pumping test plan for supply wells at Wellington Manor; Rising Sun approved the plans. ECF No. 50-3 at 12. On March 19, 2007, GTA prepared a groundwater appropriate permit application for 280,000 gallons per day for the Town's submission to Cecil County and the MDE. *Id.*; ECF No. 50-12. On April 4, 2007, Rising Sun Mayor Judy Cox signed and submitted the application. ECF No. 50-13. In September 2007, the MDE informed Rising Sun that there was not enough water in the aquifer to support 350 new homes.[5] ECF No. 50-3 at 11.

From 2004 until 2011, Frapple representatives Daniel McGarity and Steve Lauriello[6] met with Cox and Town Administrator

---

[3] The source of the interior quotation is unclear. The date is also unclear, but appears to be in late 2006. ECF No. 50-3 at 11.

[4] The date is unclear.

[5] The significance of this number is unclear: Frapple's preliminary plat is for only 227 lots. *See* ECF No. 50-5 at 4.
[6] McGarity and Lauriello jointly testified as Frapple's representatives at its deposition under Fed. R. Civ. P. 30(b)(6).

4

Calvin Bonenberger about the water and sewer issues. *See* ECF No. 50-4 at 7-8, Tr. at 29-33. As explained by McGarity:

> Well, many times, with Calvin, he would, you know, discuss the plans of how they were going to provide the sewer and water to the Town. I met with Judy Cox several times. She had mentioned that it's going to be taken care of. And again, with a couple of supervisors. . . . They were going to bring sewer and water capacity in exchange for a dedication of land.

ECF No. 50-4 at 7, Tr. at 30:1-6. According to Lauriello, Frapple was required to dedicate water rights and open space to Rising Sun as part of the approval process. *Id.* at 9, Tr. at 39:2-7.

On January 5, 2010, Frapple filed suit. On March 1, 2010 Frapple filed an amended complaint. ECF No. 9. On May 28, and September 20, 2010, the Court temporarily stayed the proceedings. ECF Nos. 16, 23. On November 14, 2010, Megill filed suit against Frapple for breach of contract in the Circuit Court for Cecil County, Maryland. ECF No. 50-10 at 4-5.

In January 2011, Rising Sun received approval to build a 500,000 gallon per day wastewater treatment plant from the MDE. ECF No. 50-3 at 16. On April 11, 2012, ground was broken on the project. *Id.* at 17.

On July 15, 2011, the Court granted Frapple leave to file a second amended complaint. ECF No. 27. The second amended complaint asserted (1) denial of due process, (2) denial of equal protection, (3) taking without just compensation, (4)

breach of contract, (5) promissory estoppel, and (6) equitable estoppel. ECF No. 28. On March 8, 2012, the Court dismissed all of Frapple's claims except for promissory estoppel. ECF No. 33. On March 22, 2012, Rising Sun filed its answer, ECF No. 34, which it subsequently amended, ECF No. 39. On March 23, 2012, the Court issued a scheduling order, setting May 7, 2012, as the deadline for amendment of the pleadings. ECF No. 35.

Sometime in mid-2012, workers building the wastewater treatment plant encroached on Frapple's property.[7] ECF No. 50-6 at 63-65, Tr. at 166-18. On September 11, 2012, Bonenberger was deposed. ECF No. 50-6. Bonenberger, the only source of information in the record about the encroachment, was unsure what had happened. First, he testified that:

> There was some grading that had to be done in order to eliminate--for the construction phase of the project there was limited access around one of the buildings that needed to be built. So in backcutting the embankment in order to avoid a--having to build this--or have this wall ten, fifteen feet high of unsupported earth, they backcut.

ECF No. 50-6 at 63, Tr. at 12-18. Bonenberger clarified that he was unsure whether Frapple's property was graded: "I don't know if [the contractor] had to get access on the property to perform the grading or if he actually graded the property." Id. at 64,

---

[7] Although unclear, the date was "a couple of weeks" before Bonenberger's September 11, 2012 deposition. ECF No. 50-6 at 2, 63, Tr. at 116:9.

Tr. at 117:17-19. The following exchange about approval of Frapple's final plat also occurred at Bonenberger's deposition:

> Q. So your recollection and testimony is that for everything that needs to be approved by the town to approve Frapple's final plat, the town has given such approval?
> A. Yeah. Without having the engineer's review letter in front of me, that is my recollection.

ECF No. 50-6 at 66, Tr. at 119:11-16.

On September 18, 2012, the Circuit Court entered judgment in the amount of $1,247,242.38 against Frapple and Appleton Partners LLC[8] in favor of Megill.

On September 28, 2012, Frapple moved for leave to file a third amended complaint. ECF No. 45. On October 15, 2012, Rising Sun opposed the motion, ECF No. 47, and on November 1, 2012, Frapple replied, ECF No. 49.

On October 26, 2012, Rising Sun moved for summary judgment. On November 13, 2012, Frapple opposed the motion, ECF No. 50, and on November 30, 2012, Rising Sun replied, ECF No. 51.

II. Analysis

    A. Legal Standards

        1. Amendment of the Complaint

There is some tension in the Federal Rules of Civil Procedure over the standard applicable to a motion to amend the complaint when a scheduling order sets a deadline for amendment.

---

[8] The relationship between Frapple and Appleton Partners is unclear.

7

See *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). Rule 15(a)(2) instructs the Court to "freely give leave [to amend] when justice so requires." The Fourth Circuit has stated that "a motion to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *HCMF Corp. v. Allen*, 238 F.3d 273, 276 (4th Cir. 2001) (internal quotation marks omitted). A motion to amend the pleadings that may be futile is treated as if the opposing party has moved to dismiss for failure to state a claim. See *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

On the other hand, Rule 16(b)(3)(A) requires the Court to issue a scheduling order that "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

The Fourth Circuit has clarified that Rule 16(b)(4) governs when the deadline for amendment has passed, holding "after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings." *Nourison Rug*, 535 F.3d at 298. Even if a party has shown good cause for modification of a scheduling order, it must

still meet the Rule 15(a)(2) standard. *Cook v. Howard*, 484 F. App'x 805, 814-15 (4th Cir. 2012).

2. Summary Judgment

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[9] In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [its] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club,*

---

[9] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

*Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

B. Motion for Leave to File a Third Amended Complaint

Frapple seeks to amend the complaint based on three events after the filing of the second amended complaint: (1) judgment in Megill's favor, (2) Rising Sun or its contractor's entry on its land for construction work, and (3) Bonenberger's testimony that everything necessary for approval of Frapple's final subdivision plat had been done. *See* ECF Nos. 45 at 3-4; 45-2 ¶¶ 56, 65, 68 (redlined third amended complaint). Rising Sun asserts that all of the proposed amendments are futile for failing to correct the deficiencies discussed by the Court in the previous memorandum opinion. ECF No. 47.

This new evidence did not arise until after the deadline for amendment of the pleadings. The few weeks from the time of these events until the filing of the motion to amend does not indicate unduly delay. Accordingly, Frapple has shown good cause for amendment of the pleadings. *See Safeway, Inc. v. Sugarloaf P'ship, LLC*, 423 F. Supp. 2d 531, 539 (D. Md. 2006). The Court will examine the futility of the proposed amendment.

1. Count I: Due Process

The Court dismissed Count I of the second amended complaint because Frapple could not show (1) an entitlement to water and sewer services and (2) the unavailability of state process. ECF

No. 32 at 15-17. The new allegations do not address these issues. *Cf.* ECF No. 45-2 ¶¶ 65, 68.

Frapple newly asserts that it has a protectable property interest in approval of the subdivision plat. *See* ECF No. 45-2 ¶ 76. Even if that were so,[10] Frapple has not alleged that state process is unavailable. *See Acorn Land, LLC v. Balt. Cnty., Md.*, 402 F. App'x 809, 817 (4th Cir. 2010) (requiring plaintiffs to "plausibly plead that no state-court process could cure [their] injury.") Accordingly, amendment of this claim would be futile.

2. Count II: Equal Protection

Frapple has not altered the allegations of Count II in any way.[11] *See* ECF No. 45-2 ¶¶ 81-86. As there has been no revision of this claim, it is still futile and amendment will be denied.

3. Count III: Just Compensation

The only substantive change made to Frapple's just compensation claim is the allegation of an entry onto Frapple's property by Rising Sun or its contractor. *See* ECF No. 45-2 ¶

---

[10] *See Gardner v. City of Balt. Mayor & City Council*, 969 F.2d 63, 68 (4th Cir. 1992) ("Any significant discretion conferred upon the local agency defeats the claim of a property interest" for issuing land use approvals.); *see also Pennington v. Teufel*, 396 F. Supp. 2d 715, 719-722 (N.D. W. Va. 2005) (applying *Gardner*). The parties have not addressed what discretion is involved in the approval the plat.

[11] It did not even edit the prior paragraphs incorporated by reference to reflect the numbering changes caused by the new allegations. *See* ECF No. 45-2 ¶ 81.

91. As the Court has previously discussed, see ECF No. 32 at 9-10, a takings claimant must generally pursue state remedies for compensation before filing a federal suit. See *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Back of Johnson City*, 473 U.S. 172, 194 (1985). There is no allegation that Frapple has done so. Accordingly, the amendment of this claim would be futile.

    4. Count IV: Breach of Contract

Frapple has added two additional allegations to its breach of contract claim: (1) Rising Sun "accepted the dedication of water rights by submitting an application to the Maryland Department of the Environment to appropriate water from Frapple's Property and by actually withdrawing water" and (2) Rising Sun "accepted the dedication of land by entering and using a portion of [Frapple's] property to construct the Town's new waste water treatment plant." ECF No. 45-2 ¶¶ 97-98.

Even if these additional allegations are correct, Frapple cannot prevail because it has not shown a vested right to develop the property. See ECF No. 32 at 24-25. Frapple has not alleged that it has "obtain[ed] a lawful building permit, commence[d] to build in good faith, and complete[d] substantial construction on the property." *Prince George's Cnty. v. Sunrise Dev. Ltd.*, 623 A.2d 1296, 1304 (Md. 1993) (internal quotation marks omitted). Without the vested right, it cannot enforce the

contract, and the amendment would be futile. See ECF No. 32 at 24-25.

        5.    Count V: Promissory Estoppel

This count was not dismissed by the Court and is subject to Rising Sun's motion for summary judgment. See ECF Nos. 33, 48. As discussed below, summary judgment will be granted because Frapple cannot show a clear and definite promise. See infra Part II.C. The new discussion of alleged dedication of water rights and land does not change this conclusion. See id.; ECF No. 45-2 ¶¶ 97-98. Accordingly, amendment would be futile.

        6.    Count VI: Equitable Estoppel

The only new allegations in this count are Rising Sun's acceptance of the dedication of water rights and land. ECF No. 45-2 ¶¶ 110-11. This does not remedy the defects in the second amended complaint. See ECF No. 32 at 27-29. For example, Frapple still has not alleged a vested right, or a representation "of some present or past fact," rather than a "promise to do something in the future." Md. Transp. Auth. Police Lodge No. 34 of Fraternal Order of Police, Inc. v. Md. Dep't of Transp., 5 A.3d 1174, 1227 (Md. Ct. Spec. App. 2010), rev'd on other grounds, 21 A.3d 1098 (Md. 2011) (internal quotation marks omitted); see ECF No. 32 at 28-29. This amendment would also be futile. As each proposed amended claim would be futile, Frapple's motion to amend will be denied.

C. Rising Sun's Motion for Summary Judgment

Rising Sun seeks summary judgment on the sole claim to survive dismissal: promissory estoppel. ECF No. 48. Frapple asserts that the evidence shows that it can succeed on its promissory estoppel claim. ECF No. 50.

In Maryland, "promissory estoppel is an alternative means of obtaining contractual relief" when acceptance or consideration is lacking. *Md. Transp. Auth. Police Lodge No. 34*, 5 A.3d at 1227 (Md. Ct. Spec. App. 2010). To state a claim for promissory estoppel, the plaintiff must allege:

> (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise.

*Pavel Enters., Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996).

Rising Sun asserts, *inter alia*, that the evidence does not show a clear promise on which Frapple could rely.[12] *See* ECF No. 48-1 at 5. Frapple asserts that there is sufficient evidence

---

[12] Because the Court will grant summary judgment on this ground, it will not reach Rising Sun's other arguments. *See* ECF No. 48-1.

from which the jury could conclude that Rising Sun had made it a clear and definite promise.[13] ECF No. 50 at 6.

Frapple relies on several actions and statements by Rising Sun--which do not specifically concern Frapple or Wellington Manor--to support its claim of a clear and definite promise: (1) Rising Sun was considering expanding its water and sewer capacity, ECF No. 39 ¶ 11;[14] (2) the March 2004 Cecil County Water and Sewer Master Plan indicated that Rising Sun intended to seek an increase in sewer discharge, ECF No. 50-3 at 7; (3) the March 21, 2006 Master Plan amendment reflecting the upgrades that the Town was building, *id.* at 10; (4) the October 10, 2006 amendment by Rising Sun to the Master Plan that referred to increased capacity at the wastewater treatment plant and new wells at Wellington Manor, which the Cecil County Planning Commission approved on October 16, 2006, *id.*; and (5) Town

---

[13] Although Frapple's representatives testified that dedication of open space and water rights were a necessary part of the approval process, *see* ECF No. 50-4 at 9, Tr. at 39:2-5, it is clear that Wellington Manor cannot be developed without water and sewer services. Accordingly, the clear and definite promise must relate to the provision of water and sewer, and that is how Frapple has generally structured its arguments. *See* ECF Nos. 28 at ¶¶ 89-93, 50 at 5.

[14] In its statement of facts, Frapple claims that Rising Sun "admits that when Frapple purchased Wellington Manor, the Town was already actively planning to expand its water and sewer capacity so as to allow development of Wellington Manor." ECF No. 50 at 2-3 (citing amended answer to second amended complaint). The amended answer stops far of such a sweeping admission and is limited to the text stated above.

15

officials' May 22, 2007 statements that the Town's plan to upgrade the wastewater treatment plan would be completed by July 31, 2009, in accordance with the consent order entered with MDE. *Id.* at 11. Even read in the light most favorable to Frapple, nothing about these events indicates a clear and definite promise. Rather, Rising Sun was simply seeking to ameliorate its own water and sewer capacity problems.

Frapple also relies on evidence specific to it and Wellington Manor. Approval Condition 10 on the preliminary plat "require[d] [Frapple] to allow exploration of open space land for possible future water source and grant town all rights and land that may be required." ECF No. 50-5 at 3. General Note 11 indicated that the development was to have water and sewer provided by Rising Sun, and Frapple was to assist in upgrading capacity. *Id.* at 4. Finally, the plat noted an area to be added to Town lands. *Id.* at 5.

At Frapple's deposition, McGarity testified that Bonenberger "discuss[ed] how they were going to provide the sewer and water to the Town." ECF No. 50-4 at 7, Tr. at 30:1-3. Cox "mentioned that [it was] going to be taken care of." *Id.* at 30:4-6. Frapple's clearest description of the offered exchange was that Rising Sun was "going to bring sewer and water capacity

16

in exchange for a dedication of land."[15] *Id.* at 30:9-10. These conversations took place "[p]robably 2004 through 2009 and probably '10 and '11." *Id.* at 8, Tr. at 33:5-6. Finally, according to Frapple, "the Town represented that it was 'currently constructing and/or installing improvements to the sewer system to reduce effluent BOD and ammonia levels and to increase capacity in order to be able to provide service to the property.'"[16] ECF No. 50-3 at 11.

Despite Frapple's assertion that a clear and definite promise could be inferred from these facts, *see* ECF No. 50 at 6, no reasonable jury[17] could find one. Much of the Town's work to expand its water and sewer capacity is not specific to Frapple. *See* ECF No. 50-3 at 11. Nothing ties the preliminary plat's condition of allowing Rising Sun to explore for water sources

---

[15] McGarity could not remember the content of the land dedication nor did he indicate that any water rights were part of the promised exchange. *See* ECF No. 50-4 at 7, Tr. at 30:8-13. Lauriello shortly thereafter testified that Rising Sun had never promised to him the right to develop Wellington Manor "in exchange for the dedication of the equivalent of open space, land, and water rights." *See id.* at 9, Tr. at 38:14-21. He indicates, however, that dedication of open space and water rights to Rising Sun was part of the approval process. *See id.* at Tr. 39:2-4.

[16] The source of the interior quotation is not specified. *See* ECF No. 50-3 at 11.

[17] Frapple has demanded a jury, and the Court assumes for the purposes of the summary judgment motion that it is entitled to one. *See* ECF No. 2; *see also Sedghi v. PatchLink Corp.*, 823 F. Supp. 2d 298 (D. Md. 2011) (analyzing whether a promissory estoppel claim should be decided by a jury).

with the condition that the development depended upon the Town's provision of water and sewer services. *See* ECF No. 50-5 at 3-4. Frapple's description of Cox and Bonenberger's promise is nonspecific and was based on discussions over seven years. *See* ECF No. 50-4 at 7-8, Tr. at 30:1-6, 33:5-6. Finally, the statement about the upgrades to the water and sewer so Wellington Manor could be served contains no promissory language, but was a statement of the current situation. From these facts, no reasonable jury could find a clear and definite promise, and Rising Sun is entitled to judgment as a matter of law. Rising Sun's motion will be granted.

III. Conclusion

For the reasons stated above, Frapple's motion for leave to file a third amended complaint will be denied. Rising Sun's motion for summary judgment will be granted.

6/27/13
Date

/s/ William D. Quarles, Jr.
William D. Quarles, Jr.
United States District Judge